UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **L. DENISE WOODSON,** | |
| Plaintiff, | |
| v. | Case No. 20-cv-02668-TNM |
| **RONALD E. SMITH, JR.,** *et al.*, | |
| Defendants. | |

<u>**MEMORANDUM ORDER**</u>

Denise Woodson, proceeding *pro se*, sues a nonprofit organization and several of its employees for discrimination and retaliatory conduct.  The organization moves to dismiss for failure to state a claim.[1]  It argues Woodson did not administratively exhaust her Complaint, did not file her Complaint within the applicable statute of limitations, and did not properly plead a claim of discriminatory discharge or retaliatory conduct.  The Court disagrees with the organization on all counts except Woodson's claim of retaliatory conduct.  The Court will therefore grant the motion in part and deny it in part.

**I.**

Woodson formerly worked at Edgewood Brookland Family Support Collaborative ("Edgewood").  Hired in 2014 as a Youth Coordinator, she was promoted three years later to Community School Coordinator.  *See* Compl. ¶¶ 1, 5, ECF No. 1.

---

[1]  Although the Complaint names the nonprofit organization and several of its employees, Woodson only served the organization.  *See* ECF Nos. 6, 10.  More, Woodson's Complaint brings claims only against Edgewood.  *See* Compl. ¶¶ 28–29, ECF No. 1.

1

Woodson alleges she has long suffered from endometriosis, a painful condition "affecting several major life activities." *Id.* ¶ 6. She underwent three surgical procedures between 2007 and 2018 and "suffer[ed] from the effects of endometriosis" during her tenure at Edgewood. *Id.* ¶ 7. But she claims that she "perform[ed] exceptionally . . . and never received a dissatisfactory performance evaluation, never was placed on a Performance Improvement Plan (PIP), and never was demoted or suspended" before her termination in 2019. *Id.* ¶ 8.

Woodson asserts that, despite her strong performance, multiple Edgewood employees targeted her, creating a hostile work environment. *Id.* ¶ 9. In one instance Woodson felt threatened "following a discussion concerning a petty cash issue" and filed a police report against the alleged assailant, fellow employee Monique Hinson. *Id.* ¶¶ 11–12. In a separate incident, Woodson asserts another employee "blurted out confidential medical information" about her to a third employee. *Id.* ¶ 17.

Woodson maintains the harassment continued when she filed for intermittent leave under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* *Id.* ¶ 18. She alleges an Edgewood program director "unnecessarily questioned" her requests for leave by demanding "specific dates on which leave would be taken and attempting to interfere with the taking of leave by continuously requesting additional . . . information" from her. *Id.* ¶ 19. More, Woodson claims the program director disclosed her FMLA request to another Edgewood employee "who was not in a position to need to know said information." *Id.* ¶ 20.

Things came to a head in November 2019. According to Woodson, she "was accused of becoming involved in a verbal altercation with a co-worker." *Id.* ¶ 22. Lisette Bishins, Edgewood's new Chief Executive Officer, allegedly ordered Woodson's suspension without first

investigating the incident or discussing it with Woodson.  *See id.* ¶¶ 22–23.  At the time of this

incident, Bishins had been at Edgewood for only two days.  *See id.* ¶ 22.

Edgewood terminated Woodson five days after the argument, claiming she had violated

the organization's Standards of Conduct policy.  *See id.* ¶¶ 25–26.  Woodson contends that

Edgewood's reliance on its Standards of Conduct is pretextual.  The real reason Edgewood

terminated her, she says, is because of her disability.  *Id.* ¶¶ 27–29.  She sues under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the District of

Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01 *et seq*.  *Id*.  She demands

compensatory and punitive damages.  *Id.* at 5.[2]

Edgewood moves to dismiss the Complaint.  *See* ECF No. 13.  The motion is now ripe.

## II.

A party may move to dismiss a complaint because it "fail[s] to state a claim upon which

relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a 12(b)(6) motion, a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"

Fed. R. Civ. P. 8(a)(2), supported by sufficient factual allegations that, if true, "state a claim to

relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

complaint offering mere "labels and conclusions" or "naked assertion[s] devoid of further factual

enhancement" does not meet the plausibility standard.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content

---

[2]  All citations are to the page numbers generated by this Court's CM/ECF system.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to Plaintiff and accept as true all reasonable factual inferences drawn from well-pled factual allegations. *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 285 (D.D.C. 2017). Complaints filed by *pro se* litigants "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up).

But a *pro se* plaintiff cannot escape the requirements of *Iqbal* and *Twombly*. *See Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009). The Court does not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Although generally "the court may consider only the facts alleged in the Complaint, any documents either attached to or incorporated in the Complaint and matters of which the court may take judicial notice," *Hurd v. D.C. Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (cleaned up), the Court must consider a *pro se* Complaint "in light of all filings, including filings responsive to a motion to dismiss," *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (cleaned up).

4

## III.

### A.

Edgewood makes two threshold arguments: first, Woodson failed to exhaust her administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and, second, her claim is time-barred.  *See* Mem. in Support of Def.'s Mot. to Dismiss at 8–9, ECF No. 13 ("Def.'s Mem.").

*First*, Edgewood's exhaustion argument.  Failure to exhaust administrative remedies is a "precursor to bringing suit" and so, if proven, provides grounds for dismissal.  *Congress v. Dist. of Columbia*, 324 F. Supp. 3d 164, 170 (D.D.C. 2018).  Edgewood asserts the Complaint does not "allege that [Woodson] filed a charge of discrimination with the EEOC with respect to her ADA claims," or "that she received the requisite Notice of Right to Sue from the EEOC to proceed with her ADA claims."  Def.'s Mem. at 8.

But a "plaintiff need not plead exhaustion in the Complaint" because failure to exhaust administrative remedies "is an affirmative defense that must be pled and proven by the defendant."  *Tapp v. WMATA*, 306 F. Supp. 3d 383, 398 (D.D.C. 2016) (cleaned up); *see also Congress*, 324 F. Supp. 3d at 170  ("As an affirmative defense, the [defendant] bears the burden of pleading and proving failure to exhaust.").  Woodson claims that she "timely filed her workplace discrimination Complaint in March 2020 and received her Right to Sue Letter on June 24, 2020."  Pl.'s Mem. in Resp. to Def.'s Mot. to Dismiss Compl. ("Pl.'s Opp'n") at 2, 4–7, ECF No. 15.  The Court accepts Woodson's representation that she has "proof of this administrative remedy being obtained" and concurs that her failure to allege exhaustion of administrative remedies in the Complaint is not a valid basis for dismissal.  *Id.* at 5.

5

*Second*, Edgewood's statute of limitations argument.  Edgewood challenges only the timeliness of Woodson's ADA claim.  Def's. Mem. at 8–9.  A plaintiff must file a claim with the EEOC within 180 days of the alleged discriminatory act.  *See* 42 U.S.C. § 2000e-5(e)(1).  The statute permits a plaintiff 300 days to file a claim with an equivalent state agency.  *Id.*

Edgewood terminated Woodson on November 25, 2019.  Compl. ¶ 25.  Woodson says she filed her workplace discrimination Complaint with the EEOC in March 2020.  Pl's. Opp'n at 4.  Thus, at the most, Woodson filed her Complaint with the EEOC 127 days after the triggering incident.  The EEOC gave her a Right to Sue Letter on June 24, 2020, giving her 90 days to sue in federal court.  Pl's. Opp'n at 4–5.  Woodson filed her lawsuit in this Court on September 21, 2020—89 days after she received the Right to Sue Letter.  *Id.* at 5.  Her suit is timely.

## B.

The Court proceeds next to Woodson's discrimination claim.  Under the ADA, an employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Similarly, under the DCHRA, "[i]t shall be an unlawful discriminatory practice" for an employer "to discharge[] any individual[] or otherwise to discriminate against any individual, with respect to . . . her[] compensation, terms, conditions, or privileges of employment" either "wholly or partially for a discriminatory reason based upon the actual or perceived . . . disability."  D.C. Code § 2-1402.11(a).  The Court applies the same analysis to claims under the ADA and the DCHRA.  *Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015).

6

"To state a claim, a plaintiff must allege: (1) that she has a disability as defined in the ADA . . . (2) that she was qualified for her position, and (3) that she suffered an adverse employment action because of her disability." *Congress*, 324 F. Supp. 3d at 169.  Edgewood concedes that Woodson has a qualified disability and that she suffered an adverse employment action.  Def's. Mem. at 9.  But it contends that it discharged her because she was not qualified for her position and not "because of" her disability.  *Id.*

Start with Woodson's qualifications.  "An individual is qualified for a position under the ADA if 'with or without reasonable accommodation, he can perform the essential functions of the employment position,' although 'consideration shall be given to the employer's judgment as to what functions of a job are essential.'"  *Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 157 (D.D.C. 2014) (quoting 42 U.S.C. § 12111(8)).

Woodson claims she was a dynamic employee who "implemented several proactive incentive programs and best practices" that "continue to be used at Edgewood to date."  Compl. ¶¶ 2–3.  She won an award for her performance and received a promotion.  *Id.* ¶¶ 4–5.  Although Woodson was diagnosed with endometriosis seven years before she joined Edgewood, it "did not affect her work with students, families, and grantees" and she "perform[ed] exceptionally."  *Id.* ¶¶ 7–8.  Edgewood responds that Woodson did not meet her "employer's legitimate expectations."  Def's. Mem. at 9.  But this goes to the cause of Woodson's termination, not her qualifications.  And in any event, for now the Court must accept Woodson's well-pled factual allegations.  *Zimmerman*, 246 F. Supp. 3d at 285.  Woodson properly pleads that she was qualified for her position.

Consider causation next.  Woodson pleads that her termination was discriminatory

7

because "never before had any of the individuals that Plaintiff accused of creating a hostile work environment for Plaintiff been reprimanded or disciplined in a similar manner." Compl. ¶ 27. Woodson appears to misunderstand the legal standard for employment discrimination. She cites a standard appropriate for a disparate treatment claim, which she did not bring. *See, e.g.*, *Bhatia v. AT&T, Inc.*, 310 F. Supp. 2d 29, 31 (D.D.C. 2004) ("Plaintiff [alleging disparate treatment resulting in termination] could [show an unfavorable action gave rise to an inference of discrimination] with evidence that a similarly situated, non-protected individual was treated differently."). Rather, Woodson "must allege sufficient facts for the Court to determine that [her] suspension and termination were at least plausibly caused by [Edgewood] discriminating against [her] because [she] is [disabled] and not because of some other legitimate reason." *Redmon v. YMCA of Metro. Washington*, 417 F. Supp. 3d 99, 102 (D.D.C. 2019).

Woodson struggles to meet her burden. She alleges that her termination "violated" her rights under the ADA. Compl. ¶ 28. But she never alleges that Bishins, who allegedly decided to fire her, knew about her disability. More, she admits that Bishins was present for her final "verbal altercation" and that Bishins told Woodson she fired her because of her violation of the Standards of Conduct policy. *Id.*

But courts are generous to *pro se* plaintiffs. *Erickson*, 551 U.S. at 94. The Court "cannot throw out a [discrimination] complaint even if the plaintiff did not plead the elements of a prima facie case." *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (cleaned up). A complaint "need not plead law or match facts to every element of a legal theory," *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C. Cir. 2000) (cleaned up), nor must it "allege all that a plaintiff must eventually prove," *Atchinson v. Dist. of Columbia,* 73 F.3d 418, 421–22 (D.C. Cir. 1996).

8

Woodson must clear only a low bar here.

A *pro se* plaintiff must still allege sufficient facts that, if accepted as true, would make the discrimination claims facially plausible. *Harris v. D.C. Water and Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015). Woodson has done so. She alleges that she has a disability, *see* Compl. ¶ 6, of which Edgewood employees were aware, *see id.* ¶¶ 17–20, and despite satisfactory performance, *see id.* ¶¶ 7–8, 21, she was terminated because of her disability, *see id.* ¶ 28. As drafted, the Complaint accomplishes what it must: it puts Edgewood on fair notice of the claims being asserted so that it can prepare a responsive answer and an adequate defense. *See Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977). Woodson's discrimination claim survives Edgewood's Motion to Dismiss.

### C.

Finally, the Court considers Woodson's retaliation claim. The ADA prohibits retaliation against an individual "because such individual has opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203. To sustain a claim for retaliation at the motion-to-dismiss stage, a plaintiff must show "(1) that he opposed a practice made unlawful by [the ADA]; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action because the employee opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) (cleaned up); *see also McNair v. Dist. of Columbia*, 213 F. Supp. 3d 81, 89 (D.D.C. 2016).

Edgewood's argument focuses on the first element, noting the absence of factual allegations to show that Woodson engaged in protected activity. *See* Def.'s Mem. at 11. Woodson points to her request for intermittent FMLA leave, equating that request with protected

activity under the ADA.  *See* Pl.'s Opp'n at 6.  She alleges that, although she provided the requisite medical certification, *see id.*; Compl. ¶¶ 6, 18, Kristene Dupree, an Edgewood program director, "unnecessarily questioned [her] use of FMLA leave . . . and imped[ed] Plaintiff's ability to take said intermittent leave."  Compl. ¶ 19.  Woodson argues that Dupree's actions violated FMLA and that Woodson's "termination was tied to this request, not any employee misconduct."  Pl.'s Opp'n at 6.

But Woodson did not bring a claim under FMLA.[3]  A retaliation claim hinges on an employee's engagement in activity protected under the *ADA*, not FMLA—a separate statute. Protected activity under the ADA does not include asking for FMLA leave, but instead includes activities such as requesting a reasonable accommodation for a disability, *see, e.g.*, *Solomon v. Vilsack*, 763 F.3d 1, 15 (D.C. Cir. 2014) (holding that the act of requesting in good faith a reasonable accommodation is a protected activity under 42 U.S.C. § 12203), or "complaining of disability discrimination and filing an administrative complaint," *Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 16 (D.D.C. 2000).

Even though she need not plead a prima facie case, Woodson offers only a conclusory assertion that her "termination was retaliation by Edgewood in response to [her] exercising her employment rights, in violation of Title I of the Americans with Disabilities Act."  Compl. ¶ 29. Missing from the Complaint are factual allegations identifying the rights to which Woodson

---

[3]  "The elements of a prima facie case of FMLA retaliation are the well-known triad: (1) the employee engaged in a protected activity under [FMLA]; (2) the employee was adversely affected by an employment decision; and (3) the protected activity and the adverse employment action were causally connected."  *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) (cleaned up).

refers, and when and how she exercised those rights.  A request for intermittent leave under FMLA—which Edgewood approved—does not suffice.  The Court will dismiss this claim.

## IV.

Woodson's Opposition to Edgewood's Motion to Dismiss suggests an attempt to raise new claims.  *See, e.g.*, Pl.'s Opp'n ¶¶ 9, 15 (HIPAA), at 10 (hostile work environment), at 15 (FMLA).  Edgewood objects to Woodson including these new claims in a response to a dispositive motion.  *See* Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss at 1–2, ECF No. 16.

Ordinarily, a plaintiff cannot amend a complaint in an opposition filing.  *See, e.g.*, *Hamilton v. United States*, 502 F. Supp. 3d 266, 278 (D.D.C. 2020) ("A complaint may not be amended by the briefs in opposition to a motion to dismiss.") (cleaned up).  But courts in this district have sometimes excused *pro se* plaintiffs.  *See, e.g.*, *Cheatham v. Wolf*, No. CV 18-03026 (CKK), 2020 WL 1047750, at *6 (D.D.C. Mar. 4, 2020) (acknowledging that although "a plaintiff generally may not amend his complaint nor assert new claims by way of a brief in opposition," some courts have "accepted a *pro se* litigant's motion to dismiss opposition as a *de facto* amended complaint"); *Heard v. U.S. Dep't of State*, No. CIV. A. 08-02123 RBW, 2010 WL 3700184, at *7 (D.D.C. Sept. 17, 2010) ("[T]he Court cannot agree with the defendants that the claims first alleged in the plaintiff's opposition memorandum are improperly before the Court.").

When deciding whether to allow a complaint to be amended by an opposition filing, courts consider four factors from *Richardson v. United States*, 193 F.3d 545 (D.C. Cir. 1999):

1.  Is the plaintiff *pro se*?

2.  When the plaintiff tendered her reply to the defendant's motion to dismiss, could she

have amended her claim as of right because the defendant had filed no responsive

pleading and plaintiff had never before sought amendment?

3.   Did the plaintiff recognize the need for and seek to make a change to her original

complaint?

4.   Would amendment of the complaint prejudice the defendant?

*Id.* at 548–49.

Woodson is proceeding *pro se*, so she satisfies the first factor.  She meets the second

factor because she did not previously seek leave to amend, Edgewood filed only a motion to

dismiss, and "a motion to dismiss is not a responsive pleading."  *Hum. v. Czech Republic-*

*Ministry of Health*, 824 F.3d 131, 140 (D.C. Cir. 2016).

But Woodson does not fare as well on the third and fourth factors.  It is not clear that she

recognized a need to amend her Complaint because she makes only cursory references to

HIPAA, Pl's Opp'n ¶ 9, 15; a hostile work environment, *id*. ¶ 10; and FMLA, *id.* ¶ 15.  And even

if Woodson were trying to amend her Complaint, her passing references are not enough to put

Edgewood on notice as to the substance of her claims.  *Califano*, 75 F.R.D. at 498 (stating that

the purpose of a Complaint is to "give fair notice of the claim being asserted so as to permit the

adverse party the opportunity to file a responsive answer, prepare an adequate defense and

determine whether the doctrine of res judicata is applicable").  Finally, allowing Woodson to

amend her Complaint in her opposition would prejudice Edgewood because she failed to give it

proper notice of her new claims.

The Court is mindful of its obligation to read "all of the plaintiff's filings together."

*Harris v. Fulwood*, 947 F. Supp. 2d 26, 28–29 (D.D.C. 2013) (cleaned up).  But the Court need

not "cull through every filing of a *pro se* litigant to preserve a defective complaint." *Richardson*, 193 F.3d at 549 (D.C. Cir. 1999). And "there is a difference between liberally construing ambiguities in *pro se* plaintiffs' complaints and completely rewriting portions of the complaint." *Bamdad v. Drug Enf't Admin.*, 617 F. App'x 7, 9 (D.C. Cir. 2015) (cleaned up). This matter therefore proceeds with the original Complaint as the operative pleading. If Woodson wishes to add new claims, she may request leave to amend her Complaint. If she chooses to do so, she must comply with Federal Rule of Civil Procedure 15(a) and Local Civil Rules 7 and 15.1.

**V.**

Woodson adequately alleges disability discrimination claims under the ADA and the DCHRA arising from her termination but fails to state a retaliation claim under the ADA.

Thus, it is hereby

**ORDERED** that Defendant Edgewood's [13] Motion to Dismiss Complaint is **DENIED** as to Woodson's disability discrimination claim and **GRANTED** as to Woodson's retaliatory conduct claim.

**SO ORDERED.**

Date: September 13, 2021                                    _____
                                                                          TREVOR N. McFADDEN, U.S.D.J.