UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **L. DENISE WOODSON**, | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-02668-TNM |
| **RONALD E. SMITH, JR.**, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

Denise Woodson, proceeding *pro se*, sues the nonprofit organization that formerly employed her for discrimination under the Americans with Disabilities Act (ADA) and the D.C. Human Rights Act (DCHRA). The organization now moves for summary judgment. It argues that Woodson has failed to create a genuine issue of material fact over the cause of her termination. The Court agrees because the organization offers a legitimate, nondiscriminatory reason for firing Woodson that she has not rebutted with evidence of pretext. The Court will therefore grant the organization's motion for summary judgment.[1]

### I.

Woodson worked for Edgewood Brookland Family Support Collaborative ("Edgewood"), an organization dedicated to stronger families, workforce development, housing stabilization, and school-based programs. *See* Compl. ¶¶ 1, 5, ECF No. 1. Edgewood hired

---

[1] As in her Complaint, Woodson again purports to sue other employees of the organization. *See generally* Opp'n, ECF No. 27. But as the Court already explained, Woodson never served these Defendants and therefore cannot sue them. *See Woodson v. Smith*, No. 20-cv-2668, 2021 WL 4169357, at *1 n.1 (D.D.C. Sept. 14, 2021).

1

Woodson as a Youth Coordinator in 2014 and promoted her to Community School Coordinator three years later. *See id.* Woodson alleges that she has long suffered from endometriosis, a painful condition "affecting several major life activities." *Id.* ¶ 6. But Woodson claims that she "perform[ed] exceptionally" despite her condition, "never received a dissatisfactory performance evaluation," and "never was demoted or suspended" before her termination in 2019. *Id.* ¶ 8; *see also* Opp'n ¶ 3, ECF No. 27.

Woodson and Edgewood disagree as to why she was fired. According to Woodson, Edgewood terminated her because of her endometriosis. *See* Compl. ¶¶ 27–29; *see also* Opp'n ¶ 2. Woodson asserts that she "always remained professional" at work and was "well respected by the leaders of the schools with whom she worked." Opp'n ¶¶ 3, 6.

Edgewood disagrees. It contends that it fired Woodson because she "engag[ed] in a public verbal altercation and shov[ed] a colleague" in front of the organization's new chief executive officer. Def.'s Mot. for Summ. J. (Def.'s MSJ) at 1, ECF No. 25; Def.'s Stmt. of Material Facts Without Genuine Issue (SMF) ¶¶ 18–23, ECF No. 25.[2] Edgewood also submits that Woodson "has a history of engaging in verbal altercations with co-workers." SMF ¶ 24; *see also* Def.'s MSJ, Ex. E (DuPree Decl.), ECF No. 25-6 (declaration from her former supervisor); Ex. J, ECF No. 25-11 (email complaint from her co-worker).

---

[2] In this district, a party opposing a motion for summary judgment must comply with Local Rule 7.1(h), which requires her to file "a separate concise statement of genuine issues setting forth all material facts" that she disputes. LCvR 7.1(h); *see also SEC v. Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2000). Woodson did not file any such document, so the Court considers Edgewood's statement of undisputed facts admitted. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (explaining that "strict compliance" with this rule is justified).

The backstory is as follows. In November 2019, Edgewood hired Lisette Bishins as its new CEO. SMF ¶ 12. Two days later, Bishins introduced herself during a meeting with Edgewood's staff and Board of Directors. *See id.* ¶¶ 14–15. During the meeting, Bishins "provided a preliminary overview of her expectations which stressed a no tolerance policy for unprofessional behavior." *Id.* ¶ 16. And Edgewood's Finance Manager Rickell Smith introduced herself and the finance department. *Id.* ¶ 17.

After Smith finished speaking, Edgewood says that Woodson "made unprofessional and rude comments about [] Smith and the services she provided." *Id.* ¶ 18. Smith approached Woodson to "question [her] about her comment to resolve her issue" after the meeting, but Woodson "began yelling" at Smith. *Id.* ¶¶ 19–20. This occurred in front of Bishins, Woodson's supervisor Kristine DuPree, members of the Board of Directors, and Chief Program Officer Ronald E. Smith, Jr. *See id.* ¶¶ 3, 7; *see also* Def.'s MSJ, Ex. G (Smith Decl.) ¶ 7, ECF No. 25-8; DuPree Decl. ¶ 10.

But that was not all. After the meeting, Woodson "pushed another co-worker, Ashanti Brown . . . and engaged in a verbal altercation with him." SMF ¶ 23. Brown submitted a written complaint documenting the incident. *See id.; see also* Def.'s MSJ, Ex. I, ECF No. 25-9. Then, Woodson entered DuPree's office, where she "remained agitated and spoke [loudly] despite requests . . . to calm down." *Id.* ¶ 21. Rather than allowing her supervisor to informally mediate the disagreement, Woodson asked to leave work for the day. *Id.* ¶ 22; *see also* DuPree Decl. ¶ 17.

Woodson describes these events differently. She states that Smith "instigated" the incident by "accost[ing]" Woodson after the meeting. Opp'n ¶ 7. Woodson contends that she "did not yell and only responded professionally" to Smith. *Id.* Woodson also states that the

3

alleged incident where she pushed Brown "is false" and that Brown was in an improper relationship with another employee at the time. *Id.* ¶ 8.

Bishins suspended Woodson on the day of the alleged incident and scheduled a meeting with her five days later. *See* SMF ¶¶ 25–26. At that meeting, Bishins fired Woodson. *See id.* ¶¶ 27–28. Edgewood submits that Bishins was an external hire with no "background information regarding any employee's personnel or medical" situation. *Id.* ¶¶ 13, 30. And Edgewood contends that Bishins did not review any "medical-related files prior to the decision to terminate" Woodson, *id.* ¶ 29, or even know that Woodson had a disability, *see id.* ¶¶ 31–32; *see also* Def.'s Reply in Support of Mot. for Summ. J., Ex. M ¶ 19, ECF No. 28-1 (declaration from Edgewood's HR consultant). "Bishins was the ultimate decision-maker in terminating [Woodson]." SMF ¶ 33; *see also* Smith Decl. ¶ 14.

Edgewood advised Woodson in a letter that it terminated her employment "based on the most recent incident involving boisterous, disruptive, disrespectful and improper conduct because this is a direct violation of the organization's Standards of Conduct policy." Opp'n, Ex. J. (Termination Letter) at 89, ECF No. 27-1. Edgewood's Employee Handbook prohibits "'fighting or threatening violence in the workplace,' 'boisterous or disruptive activity in the workplace,' 'insubordination or other disrespectful conduct,' and 'unsatisfactory performance or conduct.'" SMF ¶ 4; *see also* Def.'s MSJ, Ex. C at 75–76, ECF No. 25-4 (Handbook). The Handbook also provides that employees are expected to follow rules of conduct to "protect the interests and safety of all staff and the organization." SMF ¶ 3; Handbook at 75. And the Handbook explains that Edgewood "may terminate [the employment] relationship at any time, with or without cause, and with or without advance notice." Handbook at 76.

Woodson, however, accuses Edgewood of not following its own progressive discipline policies before terminating her. *See* Opp'n ¶¶ 4–5. True, the Handbook includes such policies. *See* Handbook at 76 (setting out progressive disciplinary steps, including a verbal warning, a written warning, and a suspension prior to termination). But the Handbook also "recognizes that there are certain types of employee problems . . . serious enough to justify either a suspension, or, in extreme situations, termination of employment, without going through the usual progressive discipline steps." Handbook at 76; *see also* SMF ¶ 5.

Woodson originally sued Edgewood under the ADA and DCHRA alleging retaliation and disability discrimination after it fired her. *See generally* Compl. The Court granted Edgewood's motion to dismiss Woodson's ADA retaliation claim but allowed her ADA and DCHRA disability discrimination claims to proceed. *See Woodson v. Smith*, No. 20-cv-2668, 2021 WL 4169357 (D.D.C. Sept. 14, 2021). In doing so, the Court noted that Woodson struggled to meet her burden because she never alleges that Bishins, who allegedly decided to fire her, knew about her disability. *See id.* at *4.

Edgewood's motion for summary judgment on Woodson's ADA and DCHRA disability discrimination claims is now ripe.

## II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

The Court views the facts in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). But her opposition must consist of more than mere unsupported allegations or denials. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The non-moving party must provide evidence that would permit a reasonable factfinder to find in her favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). Such evidence may include affidavits, declarations, or other similar materials setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp.*, 477 U.S. at 323–24. A "mere . . . scintilla of evidence" in support of the non-movant's position cannot defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

Because Woodson is *pro se*, the Court "liberally construe[s]" her filings and holds them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But Woodson must still comply with the Federal and Local Rules. *See Hedrick v. FBI*, 216 F. Supp. 3d 84, 93 (D.D.C. 2016). Woodson must show that a genuine issue of material fact exists as to whether Edgewood discriminated against her because of her disability. *See* Fed. R. Civ. P. 56(a).

**III.**

The ADA and DCHRA prohibit employers from "discriminating against an individual with a disability who, with reasonable accommodation, can perform the essential functions of the job." *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 5 (D.C. Cir. 2010) (cleaned up). Under the ADA, an employer "shall [not] discriminate against a qualified

6

individual on the basis of disability in regard to . . . discharge[.]" 42 U.S.C. § 12112(a). Similarly, under the DCHRA, "[i]t shall be an unlawful discriminatory practice" for an employer "to discharge[] any individual[] or otherwise to discriminate against any individual, with respect to . . . compensation, terms, conditions, or privileges of employment" either "wholly or partially for a discriminatory reason based upon . . . disability." D.C. Code § 2-1402.11(a). This Court applies the same analysis to claims under the ADA and the DCHRA. *See Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015).

When, as here, a plaintiff relies on indirect evidence of discrimination, the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), applies. *See Giles*, 794 F.3d at 5. Under the framework, Woodson must first show a prima facie case of discrimination based on disability. *See Brady v. Off. of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (Kavanaugh, J.). The prima facie case includes showing that Woodson has a disability under the ADA; that she was qualified for her position with or without a reasonable accommodation; and that she suffered an adverse employment action because of her disability. *See, e.g.*, *Swanks v. WMATA*, 179 F.3d 929, 934 (D.C. Cir. 1999).

But the Circuit has since simplified the inquiry. Today, "judicial inquiry into the prima facie case is usually misplaced [because] [i]n the years since *McDonnell Douglas*, the Supreme Court's decisions have clarified that the question whether the employee made out a prima facie case is almost always irrelevant." *Brady*, 520 F.3d at 493. This is so because at the summary judgment stage, "once the employer asserts a legitimate non-discriminatory reason, the question whether the employee actually made out the prima facie case is no longer relevant." *Id.* (cleaned up).

When deciding whether Edgewood has asserted a legitimate, nondiscriminatory reason for firing Woodson, the Court considers four factors: (1) whether Woodson produces evidence that would be admissible at trial; (2) whether the factfinder, if it believed Edgewood's evidence, is "reasonably . . . able to find that [its] action was motivated by a nondiscriminatory reason"; (3) whether Edgewood's proffered reason is "facially credible in light of the proffered evidence"; and (4) whether Edgewood provides a "clear and reasonably specific explanation" for its action. *Figueroa v. Pompeo*, 923 F.3d 1078, 1088–89 (D.C. Cir. 2019) (cleaned up). "[T]he issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (cleaned up).

If Edgewood proffers a legitimate, nondiscriminatory reason for firing Woodson, the burden shifts back to her. The Court then focuses on whether Woodson has produced enough evidence for a reasonable jury to find that Edgewood's explanation was not the actual basis for its action and that discrimination was the real reason. *See Brady*, 520 F.3d at 493. In other words, the focus is on Woodson's ability to prove pretext. *See Oviedo v. WMATA*, 948 F.3d 386, 395 (D.C. Cir. 2020). A plaintiff's disagreement with, or disbelief of, the employer's explanation cannot, without more, "satisfy the burden of showing that a reasonable jury could find that the employer's asserted reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Burton v. District of Columbia*, 153 F. Supp. 3d 13, 58 (D.D.C. 2015).

### A.

Edgewood has offered a legitimate, nondiscriminatory reason for firing Woodson. So Woodson's prima facie case "drops out of the picture" because this Court "has before it all the

8

evidence it needs to decide whether the defendant intentionally discriminated against [Woodson]." *Brady*, 520 F.3d at 493–94. Edgewood argues that it fired Woodson because of "two separate incidents of embarrassingly unprofessional conduct" in the presence of "the newly appointed CEO and Board of Directors immediately following a meeting where professionalism was discussed." SMF ¶ 27; Def.'s MSJ at 6–9.

Edgewood claims that Woodson both argued with Smith and pushed and argued with Brown. *See* Def.'s MSJ at 8–9. Woodson's "disruptive and disrespectful conduct (by yelling at her co-workers) and fighting (two fights – one verbal and the other verbal and physical)," occurring "within minutes of each other and in front of the CEO . . . violated the [S]tandards of [C]onduct" set forth in the Employee Handbook. *Id.* at 9; *see also id.*, Ex. I; *see also* Smith Decl. ¶¶ 7–8. These incidents, along with Woodson's "history of verbal altercations" with co-workers, led Edgewood to suspend and ultimately terminate her employment. *See* SMF ¶ 27; Def.'s MSJ at 6–9. Edgewood thus successfully points to admissible evidence of a nondiscriminatory and facially credible reason for firing Woodson. *See Figueroa*, 923 F.3d at 1088–89. And Edgewood provides a "clear and reasonably specific explanation" for its action. *Id.*

### B.

The burden now shifts back to Woodson. She must produce enough evidence for a reasonable jury to find that Edgewood's proffered explanation was not the actual reason for her termination, and that discrimination was. The Court understands Woodson to make four arguments, none of which shows pretext.

*First*, Woodson equates her request for intermittent leave under the FMLA to a request for a reasonable accommodation under the ADA. She notes that her termination followed soon

after her FMLA request, *see* Opp'n ¶ 17, and that Edgewood's "failure to accommodate [her] FMLA request for [her] endometriosis condition" is discriminatory, *id.* ¶ 2. But the evidence belies this assertion. The record reveals that Edgewood granted Woodson's request for intermittent leave under FMLA. *See* SMF ¶ 10. And Edgewood also submits that Woodson "did not request a reasonable accommodation [under the ADA] for her endometriosis or any other disability." *Id.* ¶ 9. Woodson provides no evidence to the contrary.

More, Edgewood could not plausibly grant Woodson an "accommodation" under the FMLA. *See Waggel v. Geo. Wash. Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020) (cleaned up) (noting that the "scope of entitlements under the ADA includes a range of reasonable accommodations while the FMLA authorizes only leave"). While an employee's "request can trigger both the FMLA and the ADA through language that independently satisfies the requirements of both statutes," *id.* at 1373 n.2, Woodson fails to establish that her request for intermittent FMLA leave also should have been construed as a request for a reasonable accommodation for a disability. That Woodson justified occasional absences from work because of a medical condition is not a request that her former employer grant accommodations so that she could perform the functions of her job.

*Second*, Woodson characterizes her behavior as "always . . . professional," Opp'n ¶ 1, while downplaying her own culpability. She accuses Smith of being the aggressor, *see id.* ¶ 7, and denies that the fight with Brown ever occurred, *see id.* ¶ 8. And she tries to dismiss Edgewood's claim that she has had a "history of engaging in verbal altercations with co-workers," SMF ¶ 24, as "unfounded, untrue and retaliatory in nature," Opp'n ¶ 10. But Woodson failed to dispute Edgewood's Statement of Material Facts Without Genuine Issue as to these claims, and she offers no evidence supporting her assertions.

To be sure, Woodson submits documentation that Edgewood raised her pay, *see id.*, Ex. A, ECF No. 27-1, and that her annual performance appraisals were historically above average, *see id.*, Ex. B, ECF No. 27-1. But these general indicia of her workplace conduct do not show that she never fought with Brown or that Smith was the aggressor. Indeed, Woodson's documentation predates the incidents that Edgewood claims led to her termination. The affidavits Woodson submits from a former Edgewood employee do not support her claims either. *See id.*, Exs. D, F, G, ECF No. 27-1. In short, Woodson's evidence for her claims about professionalism boils down to her own self-perception. But Woodson's attempt to "demonstrate that the employer is making up or lying about the underlying facts that informed the predicate for the employment decision" crumbles against the weight of Edgewood's evidence. *Brady*, 520 F.3d at 495.

*Third*, Woodson faults Edgewood for not following its progressive discipline policies. *See* Opp'n ¶ 5. She also argues that Edgewood neither rated her job performance unsatisfactory nor disciplined her for unprofessional behavior before her termination. *See id.*; *see also id.*, Ex. B. But job performance was not the reason Edgewood fired Woodson, and the lack of prior discipline would not preclude discipline for her conduct in front of the CEO, Board Members, and her co-workers. By its terms, the Employee Handbook permits termination of employment without first going through the three-step progressive discipline process if the employee conduct is sufficiently egregious. *See* Handbook at 77. Edgewood considered Woodson's "boisterous, disruptive, disrespectful and improper" conduct, Termination Letter at 89, to be sufficiently serious. Woodson's dissatisfaction or disagreement with the decision is irrelevant. *See Burton*, 153 F. Supp. 3d at 58.

11

*Fourth*, Woodson asserts that Bishins "had significant background concerning [Woodson's] medical history or ADA/FMLA requests prior to [her] termination." Opp'n ¶ 15; *see also id.* ¶¶ 16–17. But the exhibits Woodson cites to do not prove this claim. *See id.*, Ex. H (email about a new HR consultant); Ex. I (email from Bishins after the meeting telling Woodson to take a few days off before meeting to discuss the incidents); Ex. J (Woodson's termination letter). Nor do any of Woodson's other exhibits—including a few affidavits—that she submits. Though one affiant states that Woodson's HR manager divulged Woodson's medical condition to another employee, it says nothing about the HR manager telling Bishins. *See* Ex. F. Woodson has therefore offered no declaration, affidavit, or exhibit showing that Bishins knew of her disability or her prior accommodation requests. Unsupported assertions of fact at the summary judgment stage—even levied by *pro se* plaintiffs—cannot defeat "supported assertions" by defendants. *Oviedo*, 948 F.3d at 397 (holding that summary judgment for defendant was proper where a *pro se* plaintiff levied an allegation in his opposition but did not provide a declaration or affidavit proving it).

Ultimately, Woodson offers no evidence to rebut Edgewood's statements that Bishins did not know about her disability, *see* SMF ¶ 31; Ex. G, and that Bishins alone made the termination decision, *see* SMF ¶ 33; Ex. G. An employer cannot discriminate because of a disability if it knows nothing about it. *See Conn v. Am. Nat'l Red Cross*, 149 F. Supp. 3d 136, 149 (D.D.C. 2016).

Woodson disagrees with Edgewood's decision to fire her. But her disagreement "does not amount to pretext without showing that false reasons were deployed as a smokescreen to provide cover for unlawful discrimination." *SaintPreux v. Mayorkas*, No. 1:19-cv-01364, 2021 WL 3912180, at *4 (D.D.C. Sept. 1, 2021) (citation omitted), *aff'd,* No. 21-5221, 2022 WL

1177328 (D.C. Cir. Apr. 14, 2022). To be sure, Woodson disputes a few facts, *see* Opp'n ¶ 8, but because none are evidence of pretext, she cannot overcome Edgewood's motion for summary judgment. Thus, the Court will grant Edgewood's motion for summary judgment on Woodson's ADA and DCHRA claims.

* * *

Woodson also argues that she has not had the opportunity for "significant discovery." Opp'n ¶ 13; *see also id.* at 6. But the parties had nearly seven months to conduct discovery. The Court first entered a scheduling order providing for six months of discovery. *See* Minute Entry (October 26, 2021). It then provided Woodson two more weeks to respond to Edgewood's discovery requests. *See* Minute Entry (May 6, 2022). Woodson therefore had ample time to conduct discovery.

**IV.**

For these reasons, the Court finds that there are no material facts in dispute and that Woodson fails to show that her disability was the actual reason for her termination. The Court will therefore grant Edgewood's motion for summary judgment. A separate Order will issue.

Dated: November 8, 2022

                     TREVOR N. McFADDEN, U.S.D.J.